No. 25-3001

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

**JAI SAI BABA LLC, *et al.*,**
Plaintiffs,

**DIP HOSPITALITY, LLC,**
*Appellant,*

v.

**CHOICE HOTELS INTERNATIONAL, INC.**
*Appellee.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 5:20-cv-02823-JMG (Hon. John M. Gallagher)

## BRIEF OF APPELLANT DIP HOSPITALITY, LLC

Justin E. Proper
HESKIN & PROPER, PLLC
641 Lexington Avenue, 14th Floor
New York, New York 10022
(407) 403-5990
Justin@heskinproper.com
*Attorneys for Appellant DIP Hospitality, LLC*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1, Appellant DIP Hospitality, LLC ("DIP") states that it is a privately held limited liability company.

**TABLE OF CONTENTS**

Corporate Disclosure Statement ................................................................................i

Table of Authorities ................................................................................................ ii

Statement of Jurisdiction.........................................................................................1

Statement of the Issues Presented for Review ........................................................2

Statement of Related Cases and Proceedings .........................................................3

Statement of the Case...............................................................................................3

    A. The Franchise Agreement and Its Fee-Shifting Command ............................4

    B. The Arbitration and the Interim Award .........................................................4

    C. The Final Award and the Equal Cost Split .....................................................5

    D. The Motion to Vacate and the District Court's Order ...................................6

Summary of the Argument........................................................................................7

Standard of Review...................................................................................................9

Argument.................................................................................................................10

    I. The District Court Reviewed the Wrong Claim Under the Wrong Standard and Never Decided DIP's Principal Ground for Vacatur..................................10

        A. DIP's principal ground was that the panel exceeded its powers under § 10(a)(4); manifest disregard was pleaded only in the alternative. ...............10

        B. Exceeded-powers review and manifest-disregard review are distinct inquiries governed by different standards. ..................................................10

        C. The district court applied manifest disregard's subjective test to DIP's exceeded-powers ground, then expressly declined to decide the essence question....................................................................................................11

        D. Applying the wrong standard to a properly presented, dispositive ground is reversible error. ..................................................................................13

        E. Relief…………………………………………………………………14

    II. On the Correct Standard, the Equal Apportionment of Arbitration Costs and Arbitrator Fees Does Not Draw Its Essence From Section 16. ..........................14

A. An award that rewrites a clear contractual term exceeds the panel's powers. ..................................................................................14

B. Section 16 mandates that the prevailing party recover its arbitration costs and arbitrator fees. ..........................................................15

C. The AAA Rules do not authorize the panel to override Section 16's command. ..........................................................................................16

D. The panel rewrote Section 16 by extending the attorneys'-fee reasonableness analysis to costs the contract does not so qualify. ...............18

E. Relief.………………………………………………………………20

Conclusion ...........................................................................................................22

Certificate of Bar Membership ...........................................................................22

Certificate of Compliance ...................................................................................22

Certificate of Service ..........................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Americo Life, Inc. v. Myer*, 440 S.W.3d 18 (Tex. 2014) ..........................................16

*Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237 (3d Cir. 2005) ..........................................................................................................13, 19

*Brodsky v. Brodsky*, 319 Md. 92 (1990)…………………………………………5

*Canaras v. Lift Truck Servs., Inc.*, 272 Md. 337 (1974)…………………………5

*Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513 (3d Cir. 2009) ................................................................................................................1

*Chase v. Cohen*, 519 F. Supp. 2d 267 (D. Conn. 2007) ..........................................16

*CITGO Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809 (3d Cir. 2004) .....................................9

*France v. Bernstein*, 43 F.4th 367 (3d Cir. 2022) .....................................................9

*George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226 (3d Cir. 2024) ........................1

*Goobich v. Excelligence Learning Corp.*, 2020 U.S. Dist. LEXIS 172834 (N.D. Cal. Sept. 18, 2020) ......................................................................................16

*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001) .................10

*Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574 (3d Cir. 2005) ..............................................................................................................10

*Monongahela Valley Hosp., Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195 (3d Cir. 2019) ...................................................................................................14

*Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013) ................................10, 13

*PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd.*, 400 F. App'x 654 (3d Cir. 2010) ...............................................................10, 12, 13, 19, 20

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987) ....................13

**Statutes and Rules**

9 U.S.C. § 10 ................................................... 1, 2, 6, 7, 9, 11, 12, 13, 20

9 U.S.C. § 16 ...........................................................................................1

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. § 1332 .....................................................................................1

AAA Commercial Arbitration Rules R-47, R-53, R-54 .........................5, 15, 16, 17

Fed. R. App. P. 4 .....................................................................................1

Fed. R. App. P. 32 ..................................................................................21

# STATEMENT OF JURISDICTION

**A. District Court Jurisdiction.** The district court had subject-matter jurisdiction over the underlying action under 28 U.S.C. § 1332. Having compelled the parties to arbitration and retained the action, the district court had authority to entertain DIP's motion to vacate or modify the arbitration award under 9 U.S.C. §§ 10–11.

**B. Appellate Jurisdiction.** This Court has jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3). On October 10, 2025, the district court denied DIP's Motion to Partially Vacate or Modify the Arbitration Award. (JA 127) That Order is final: it left nothing for the district court to do but confirm the award and enter judgment. *See George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226, 233 (3d Cir. 2024). Choice Hotels International, Inc. ("Choice") had already satisfied the merits award by paying DIP $4,155,627.19, and DIP's motion sought only to correct the allocation of arbitration costs and arbitrator fees; no further proceedings on DIP's claims remained. That the consolidated *Jai Sai Baba* action remains stayed as to other franchisees does not affect finality as to DIP, whose individual claims have concluded. Independently, an order denying a motion to vacate an arbitration award is a "final decision with respect to an arbitration" appealable under 9 U.S.C. § 16(a)(3). *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 521 (3d Cir. 2009).

DIP timely appealed on October 14, 2025, within thirty days of the October 10, 2025 order. Fed. R. App. P. 4(a)(1)(A). (JA132.) By order dated November 21, 2025, this Court referred the question of appellate jurisdiction to the merits panel and directed the parties to address it in their briefs. For the reasons stated above, appellate jurisdiction is proper.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred in its review of DIP's principal ground for vacatur—that the arbitration panel exceeded its powers under 9 U.S.C. § 10(a)(4)— by ignoring both the express terms of the franchise agreement as it relates to the mandatory reimbursement of arbitration fees and costs to the prevailing party as well as American Arbitration Association ("AAA") commercial rules which required the panel to give effect to the parties' agreement. *See* JA128-30.

2. Whether the panel exceeded its powers under § 10(a)(4) when, despite Section 16 of the franchise agreement commanding that the prevailing party "will recover" its "arbitration costs" and "arbitrator fees," the panel apportioned those costs equally between the parties by applying the same reasonableness-and-proportionality analysis the contract authorizes only for attorneys', expert, and travel expenses. *See* JA084-90.

Suggested answer to each issue: Yes.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court.

## STATEMENT OF THE CASE

### A. The Franchise Agreement and Its Fee-Shifting Command

This appeal presents a single, discrete question of contract enforcement. DIP Hospitality, LLC and Choice Hotels International, Inc. entered a written franchise agreement dated October 2, 2015 for the operation of a Comfort Suites® hotel in Buffalo, New York (the "Franchise Agreement"). (JA081-JA093.) Section 21 compels disputes to binding arbitration in Maryland "in accordance with the Commercial Arbitration Rules of the American Arbitration Association," subject to a single express exception concerning the timing of document and witness production, and directs the arbitrator to apply Maryland substantive law. (JA093 (§ 21).

Section 16 governs fees and costs. It provides in relevant part:

> The prevailing party (as determined by the court or arbitrator) in any arbitration or claim filed to enforce the terms of this Agreement *will recover* from the other party the *reasonable* expenses of its attorneys . . . along with *any* court costs, arbitration costs, arbitrator fees, the *reasonable* costs of necessary expert witnesses, and the *reasonable* travel costs (including food and lodging) of the prevailing party's witnesses in the proceeding.

(JA092 (§ 16) (emphasis added).). Two textual features control this appeal. First, the prevailing party "will recover"—mandatory language, not a grant of discretion. Second, the word "reasonable" qualifies the attorneys', expert-witness, and travel expenses, but the "arbitration costs" and "arbitrator fees" are introduced by the word "any" and are not qualified by "reasonable" at all.

## B. The Arbitration and the Interim Award

In 2020, DIP and more than fifty other Choice franchisees commenced a consolidated action against Choice in the Eastern District of Pennsylvania. In 2021, the district court (Leeson, J.) compelled the plaintiffs to individual binding arbitration and stayed the action. Choice then commenced an AAA arbitration against DIP for breach of contract, and DIP counterclaimed for wrongful termination and related relief. A three-member panel presided over an eleven-day hearing involving twenty-four witnesses and hundreds of exhibits. (JA036–040.)

On July 9, 2024, the panel issued an Interim Award. It rejected the bulk of Choice's claims, sustained DIP's counterclaim for anticipatory breach, and awarded DIP a net recovery of $4,155,627.19—which Choice has paid. (JA038.) The panel found that "DIP Hospitality, LLC is the Prevailing Party in this proceeding." (JA079-82.) Two features of the Interim Award bear directly on this appeal. The panel repeatedly announced the interpretive rule that would govern its work: it "may not 'rewrite the terms of [the] contract, or draw a new contract for the parties, when

the terms thereof are clear and unambiguous,'" and "where a contract is plain as to its meaning there is no room for construction and it must be presumed that the parties meant what they expressed." (JA042–043) (quoting *Canaras v. Lift Truck Servs., Inc.*, 272 Md. 337 (1974)).) And, construing a different provision against DIP, the panel held that "[t]he word 'may' is generally understood as permissive, as opposed to mandatory, language." (JA068 (quoting *Brodsky v. Brodsky*, 319 Md. 92 (1990)).)

### C. The Final Award and the Equal Cost Split

The parties bifurcated fees and costs. As the prevailing party, DIP petitioned under Section 16 for its attorneys' fees, its expert-witness and travel costs, and its arbitration costs and arbitrator fees. On January 21, 2025, the panel issued its Final Award, incorporating the Interim Award "in its entirety, and without modification." (JA088-89.)

For attorneys' fees, the panel applied Maryland's contractual fee-shifting framework and, because DIP had "prevailed on one of the three categories of its claims," reduced DIP's requested $821,186.00 to $374,539.11, together with $50,411.77 for expert-witness and travel costs. (JA085-89.) DIP does not challenge that reduction on appeal.

The panel then turned to the arbitration costs and arbitrator fees. Rather than award them to DIP as Section 16 provides, the panel invoked AAA Commercial Rule 47(c), which states that the arbitrator "may apportion such fees, expenses, and

compensation among the parties in such amounts as the arbitrator determines is appropriate." (JA024; JA088-89.) "Applying the same factors and analyses that were used to determine the award of attorney's fees and related expenses," the panel split the AAA administrative fees ($26,850.00) and the arbitrators' compensation and expenses ($280,559.71) equally between Choice and DIP. (JA088–089.) Because DIP had already paid more than its apportioned half, the panel directed Choice to reimburse DIP only $5,174.99, the overpayment above that half. (JA089.) The net effect was that, although DIP was the prevailing party, it bore $158,879.85 of its own arbitration costs and arbitrator fees.

The "same factors" the panel carried over from the attorneys'-fee analysis were, by its own description, proportionality factors: (1) that "DIP prevailed on one of the three categories of its claims"; (2) "the amount claimed by DIP and the result DIP obtained"; and (3) that the award was "a reasonable reflection of the number of witnesses and length and substance of their respective testimony, the number of exhibits introduced, and the emphasis made during hearings, briefing and argument." (JA088.)

**D. The Motion to Vacate and the District Court's Order**

DIP moved in the district court to partially vacate or modify the Final Award under 9 U.S.C. § 10(a)(4), on the ground that the panel exceeded its powers by disregarding Section 16's mandate; DIP raised manifest disregard only in the

alternative. (JA019–24.) On October 10, 2025, the district court denied the motion. (JA128.) The court framed DIP's argument as a contention that "the panel . . . ignored Section 16," and rejected it because "Plaintiffs have not established that the panel knew the applicable law but ignored it anyways." (JA129.) The court then declined to reach the contract question: "This Court offers no opinion on the panel's interpretation of Section 16 of the Franchise Agreement, instead it merely finds that there is no basis to vacate the arbitral award." (JA130.) DIP timely appealed.

## SUMMARY OF THE ARGUMENT

This appeal turns on a single provision that the panel chose to ignore and which the District Court erred by refusing to interpret much less give effect to. Section 16 of the Franchise Agreement commands that the prevailing party "will recover" from the other party its "arbitration costs" and "arbitrator fees." The panel found DIP the prevailing party yet split those costs equally between the parties. That result cannot be reconciled with the contract, and the district court's order upholding it rests on the manifest disregard of the law standard. The District Court did not address DIP's lead argument which was that the panel exceeded the scope of its authority as limited by the parties' Agreement.

DIP's principal ground for vacatur was that the panel exceeded its powers under § 10(a)(4)—that the equal split does not draw its essence from Section 16. DIP raised manifest disregard as an alternative argument predicated on the panel having

7

ignored black letter contract law, and Choice's own opposition described the motion that way. Those two grounds are governed by different standards. Exceeded-powers review is objective: it asks whether the award draws its essence from the Agreement, or whether the panel instead dispensed its own brand of justice. Manifest disregard is subjective: it asks whether the arbitrators knew the governing law and deliberately defied it. The district court conflated the two. It answered DIP's exceeded-powers argument by demanding proof that the panel "knew the applicable law but ignored it"—the manifest-disregard test—and then expressly declined to decide whether the equal split can be squared with Section 16. In doing so, the District Court committed reversible error. Had the District Court interpreted Section 16 as it was required to do (and which this Court will now do as part of its *de novo* review), the District Court would have concluded that the panel imposed its own brand of industrial justice by ignoring the express language in Section 16 relating to the reimbursement of arbitration fees and costs to the prevailing party. This Court should reverse and direct that the apportionment be vacated or modified and that DIP be awarded arbitration fees and costs in the amount of $158,879.85.

II. On the correct standard, the equal apportionment cannot survive. Section 16 commands that the prevailing party "will recover" "any . . . arbitration costs, arbitrator fees"—mandatory and unqualified language, as the panel itself recognized when it held that "may" is permissive precisely because it is not mandatory. The

AAA Rules the panel invoked are incorporated by Section 21, but only "in accordance with" the Agreement and subject to a single, unrelated carve-out; a general set of incorporated rules cannot displace a specific, mandatory command the parties wrote. Indeed, the very Rule the panel invoked to apportion costs independently limits all relief to what is "within the scope of the agreement of the parties." And the panel's stated method—applying "the same factors and analyses" it used for attorneys' fees to the arbitration costs and arbitrator fees—imported a reasonableness-and-proportionality limitation into two categories that Section 16, by its terms, does not qualify with the word "reasonable." In doing so, the panel did not construe Section 16; it rewrote it, adding a word the parties omitted and converting a command into a discretion grant. Because the essence question is one of law on an undisputed record, this Court can decide it and direct that Choice, the non-prevailing party, bear the arbitration costs and arbitrator fees Section 16 requires.

**STANDARD OF REVIEW**

This Court reviews a district court's legal conclusions *de novo* and its factual findings for clear error. *France v. Bernstein*, 43 F.4th 367, 373 (3d Cir. 2022). Whether an arbitration panel exceeded its powers under 9 U.S.C. § 10(a)(4) is a question of law reviewed *de novo*. *CITGO Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 815 (3d Cir.

9

2004). The selection of the governing legal standard is likewise a question of law reviewed *de novo*.

## ARGUMENT

**I. The District Court Reviewed the Wrong Claim Under the Wrong Standard and Never Decided DIP's Principal Ground for Vacatur.**

**A. DIP's principal ground was that the panel exceeded its powers under § 10(a)(4); manifest disregard was pleaded only in the alternative.**

DIP's motion led with § 10(a)(4): the panel exceeded its powers because the equal apportionment does not draw its essence from Section 16. (JA019–24.) DIP raised manifest disregard second, as a fallback. Choice's own opposition confirms the framing, describing DIP's motion as presenting "whether the Arbitration Panel's order exceeds the scope of its authority or manifests a disregard for the law." (JA104.) The exceeded-powers theory was not a makeweight; it was the heart of the motion.

**B. Exceeded-powers review and manifest-disregard review are distinct inquiries governed by different standards.**

Under § 10(a)(4), the question is objective: whether the arbitrators, in fashioning the award, remained within the authority the Agreement gave them—that is, whether the award "draw[s] its essence" from the contract, or whether the panel instead imposed "its own brand of industrial justice." The court asks only "whether the arbitrator (even arguably) interpreted the parties' contract," *Oxford Health Plans*

*LLC v. Sutter*, 569 U.S. 564, 569 (2013); *accord Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)—not whether the arbitrators subjectively knew any particular rule of law. An award that rests on no plausible construction of the Agreement, or that rewrites a term the parties wrote, cannot stand however sincerely rendered. *See PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd.*, 400 F. App'x 654, 656 (3d Cir. 2010).

Manifest disregard is a different standard entirely. It requires proof of the arbitrators' state of mind: that the correct legal standard was obvious, that the arbitrator was subjectively aware of it, and that the arbitrator nonetheless proceeded to ignore it in fashioning the award. *See Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 578 (3d Cir. 2005). Knowledge and deliberate defiance are essential to manifest disregard and irrelevant to exceeded-powers review. A panel can exceed its powers—by rewriting a clear term—without any awareness that it is misstating the law at all. The two doctrines ask different questions and cannot be answered with a single test.

**C. The district court applied manifest disregard's subjective test to DIP's exceeded-powers ground, then expressly declined to decide the essence question.**

The district court's operative reasoning took DIP's exceeded-powers argument and answered it with the manifest-disregard standard. It recited that "Plaintiffs argue that the panel . . . ignored Section 16," then rejected the argument

11

because "Plaintiffs have not established that the panel knew the applicable law but ignored it anyways." (JA129.) That is the subjective manifest-disregard test—knowledge plus deliberate disregard—not the objective essence inquiry § 10(a)(4) demands. Requiring DIP to prove the panel's subjective awareness answered a question DIP's principal ground never posed.

The court then confirmed it had not performed the essence analysis at all: "This Court offers no opinion on the panel's interpretation of Section 16 of the Franchise Agreement, instead it merely finds that there is no basis to vacate the arbitral award." (JA130.) But whether the equal apportionment draws its essence from Section 16 is the § 10(a)(4) question. A court cannot resolve an exceeded-powers challenge while declining to decide whether the award is grounded in the contract. The lone contract-facing sentence in the order—the court's quotation of the panel's boilerplate that it "considered the contractual obligations of the parties and applicable law"—is not a substitute; reciting that a panel invoked the contract is not a finding that the award draws its essence from it. If it were, no exceeded-powers challenge could ever succeed, because every panel recites that it considered the parties' Agreement. *Cf. PMA Capital*, 400 F. App'x at 656.

**D. Applying the wrong standard to a properly presented, dispositive ground is reversible error.**

Two errors compound here, each independently warranting reversal. First, the court applied the wrong legal standard—importing manifest disregard's mental-state requirement into a § 10(a)(4) exceeded-powers claim. Selection of the governing standard is a question of law reviewed *de novo*, and a decision resting on the wrong standard cannot stand. Second, the court never adjudicated DIP's principal ground. A district court must decide the dispositive argument a party actually raises; resolving the case on an alternative theory while leaving the primary theory undecided deprives this Court of a reasoned decision to review and warrants reversal.

That the unaddressed question is substantial only underscores the error. The panel, earlier in this very arbitration, adopted the interpretive rule that governs it: mandatory terms control and the panel "may not rewrite the terms of [the] contract" when they are clear, holding that "may" is permissive precisely because it is not "shall" or "must." (JA043)  Section 16's command that the prevailing party "will recover" its arbitration costs and arbitrator fees is mandatory by the panel's own measure. Whether the equal split can be squared with that command is the question § 10(a)(4) required the district court to answer, which it did not.

**E. Relief.**

Because the record permits plenary review, this Court can decide the essence question itself and vacate or modify the apportionment. *See* Part II.

## II. On the Correct Standard, the Equal Apportionment of Arbitration Costs and Arbitrator Fees Does Not Draw Its Essence From Section 16.

### A. An award that rewrites a clear contractual term exceeds the panel's powers.

An arbitrator's authority is bounded by the parties' Agreement. The award must "draw its essence" from the contract, and "an arbitrator 'may not ignore the plain language of the contract.'" *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). When an arbitrator instead issues an award that "simply reflects his own notions of economic justice rather than drawing its essence from the contract," he acts outside his delegated authority. *Oxford Health*, 569 U.S. at 569. This Court enforces that limit by vacating awards that rewrite material terms. In *PMA Capital*, the panel "wrote material terms of the contract out of existence" and ordered relief no party had requested; this Court held the arbitrators "went beyond the scope of their authority" because straying from judicial formalities "did not give them authority to reinvent the contract before them." 400 F. App'x at 656. And in *Brentwood Medical Associates v. United Mine Workers of America*, the arbitrator "directly contradicted the plain language of the CBA" by reading in a right the agreement did not contain—conduct this Court called "the opposite of issuing an

award that drew its essence from the CBA." 396 F.3d 237, 241 (3d Cir. 2005). Even the deference owed to arbitrators has a floor: "[i]f the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement." *Monongahela Valley Hosp.*, 946 F.3d at 199.

**B. Section 16 mandates that the prevailing party recover its arbitration costs and arbitrator fees.**

Two features of Section 16's text place the equal split beyond the panel's authority. First, "will recover" is mandatory. It is not "may recover." The panel itself supplied the governing canon in the Interim Award, holding that "[t]he word 'may' is generally understood as permissive, as opposed to mandatory, language." (JA068). By that measure, "will" is a command. Once DIP was the prevailing party—as the panel expressly found—Section 16 entitled it to recover its arbitration costs and arbitrator fees as of right, leaving the panel no discretion to apportion them.

Second, the word "reasonable" qualifies attorneys', expert, and travel expenses—but not arbitration costs or arbitrator fees. Section 16 shifts "the reasonable expenses of its attorneys . . . along with any court costs, arbitration costs, arbitrator fees, the reasonable costs of necessary expert witnesses, and the reasonable travel costs . . . of the prevailing party's witnesses." (JA092 at § 16.) The drafters inserted the reasonableness limitation three times—before attorneys' expenses, expert costs, and travel costs—and conspicuously omitted it before "arbitration

costs" and "arbitrator fees," which they introduced instead with the word "any." Under settled interpretive principles, and under the Maryland law the Agreement selects, the deliberate inclusion of a qualifier in several parallel places and its omission in another is presumed intentional. The prevailing party therefore recovers all of its arbitration costs and arbitrator fees; the contract leaves no room for a reasonableness or proportionality reduction of those two categories.

That asymmetry is also why DIP does not appeal the reduction of its attorneys' fees. Because Section 16 qualifies attorneys', expert, and travel expenses with "reasonable," the panel had authority—indeed, under Maryland fee-shifting law, an obligation—to award only reasonable amounts and to reduce them for partial success. DIP accordingly accepts the roughly fifty-five percent reduction of its requested attorneys' fees. The appeal is confined to the two categories the contract does not qualify: arbitration costs and arbitrator fees.

## C. The AAA Rules do not authorize the panel to override Section 16's command.

The panel grounded the equal split in AAA Commercial Rule 47(c), which permits the arbitrator to "apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate." (JA088.) But Section 21 incorporates the AAA Rules only "in accordance with" the Agreement, and subject to a single express carve-out—concerning the timing of document and

witness production—that has nothing to do with fees or costs. (JA093 (§ 21).) Where a specific contractual command conflicts with a generally incorporated set of rules, the specific command controls, and the rules apply only to the extent they do not conflict with it. That is black-letter law, and every court to confront this precise conflict—general incorporation of the AAA Rules versus a specific fee-or-cost provision—has held that the specific provision governs. *See Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 24 (Tex. 2014) ("the specific provisions in the arbitration agreement take precedence and the arbitration rules are incorporated only to the extent that they do not conflict with the express provisions"); *Goobich v. Excelligence Learning Corp.*, 2020 U.S. Dist. LEXIS 172834, at *6–7 (N.D. Cal. Sept. 18, 2020); *Chase v. Cohen*, 519 F. Supp. 2d 267, 280 (D. Conn. 2007).

The Rules the panel invoked confirm, rather than defeat, this limit. Rule 47 opens by bounding the arbitrator's remedial authority: subsection (a) authorizes the arbitrator to grant only relief that is "just and equitable and within the scope of the agreement of the parties." AAA Commercial Rule R-47(a). The apportionment power the panel invoked in subsection (c) is thus restricted by subsection (a)'s command that any relief remain within the parties' Agreement. Section 16 of the Agreement, directs that the prevailing party "will recover" its "arbitration costs" and "arbitrator fees." An apportionment that overrides Section 16 is therefore not "within the scope of the agreement." Rather, it exceeds the very authority the Rule confers.

The panel transgressed not only Section 16 but the AAA Rule it invoked to justify departing from it. The AAA Rules were incorporated to fill gaps, not to trump Section 16's specific command.

The Rules themselves are consistent with this reading. Rule 47(c) directs the arbitrator to "assess" the fees "provided in" Rules 53, 54, and 55 and permits apportionment, but nothing in the Rules purports to override a controlling contractual allocation. Rule 53 makes administrative fees subject to "final apportionment by the arbitrator in the award," and Rule 54 provides that arbitration expenses "shall be borne equally by the parties . . . unless the arbitrator in the award assesses such expenses . . . against any specified party." (JA106.) Those are default rules that yield to the parties' Agreement; they do not displace it. The discretion the Rules confer exists only in the absence of a contrary contractual command—and here Section 16 supplied one.

**D. The panel rewrote Section 16 by extending the attorneys'-fee reasonableness analysis to costs the contract does not so qualify.**

The decisive point is the panel's own explanation of what it did. Having reduced DIP's attorneys' fees for partial success – which the panel purported Section 16's "reasonable" qualifier permitted it to do – the panel wrote: "Applying the *same factors and analyses* that were used to determine the award of attorney's fees and related expenses, the Arbitrators find that the fees of the American Arbitration

18

Association, and the fees and expenses of the Arbitrators, should be borne Fifty Percent (50%) . . . by Choice . . . and Fifty Percent (50%) by . . . DIP." (JA088–90 (emphasis added).) And the "same factors" were, in the panel's own words, proportionality factors: that "DIP prevailed on one of the three categories of its claims," "the amount claimed by DIP and the result DIP obtained," and a "reasonable reflection" of the witnesses, exhibits, and emphasis at the hearing. *Id.*

That is the error, in the panel's own hand. A reasonableness-and-proportionality analysis is textually licensed only for the categories Section 16 qualifies with "reasonable"—attorneys' fees, expert costs, and travel expenses. By applying "the same factors and analyses" to the arbitration costs and arbitrator fees, the panel imported into those two categories a limitation the contract does not contain. It treated "will recover . . . any . . . arbitration costs, arbitrator fees" as though it read "will recover the reasonable arbitration costs and arbitrator fees, apportioned in proportion to success." That is not interpretation; it is redrafting. The panel added the word "reasonable" the parties omitted and converted a mandatory, unqualified command into a discretionary apportionment—precisely the conduct that exceeds an arbitrator's powers. *PMA Capital*, 400 F. App'x at 656; *Brentwood*, 396 F.3d at 241.

The departure is the more striking because it contradicts the interpretive rule the panel announced and applied throughout the Interim Award. The panel held that

it "may not rewrite the terms of [the] contract . . . when the terms thereof are clear and unambiguous," that "where a contract is plain as to its meaning there is no room for construction," and that the written language controls "regardless of the intention of the parties if the language is clear and unmistakable." (JA043–44.) The panel invoked those very rules to reject DIP's claims and to construe the Agreement against DIP. Section 16 is clear and unambiguous: the prevailing party "will recover" "any . . . arbitration costs, arbitrator fees." Having bound itself to enforce clear terms as written, the panel, consistent with its own stated method, could not rewrite this one. An award that abandons the panel's announced interpretive rule to reach a result the text forecloses is the paradigm of an award that fails to draw its essence from the Agreement.

The district court's single contrary observation does not save the award. Quoting the panel's recital that it "considered the contractual obligations of the parties and applicable law," the court suggested the panel had construed Section 16. But a recital that the panel considered the contract is not a construction of it, and cannot immunize an apportionment the contract's text forbids. If boilerplate of that kind sufficed, no exceeded-powers challenge could ever succeed. *Cf. PMA Capital*, 400 F. App'x at 656.

### E.     Relief.

Because the issue is a matter of law concerning an undisputed record, this Court can and should decide it. Further, the Court should direct that the apportionment be vacated or modified so that Choice, the non-prevailing party, bears the arbitration costs and arbitrator fees Section 16 requires it to pay (the $158,879.85 DIP paid) and that the fee-and-cost award be modified accordingly.

## CONCLUSION

For the foregoing reasons, the Court should reverse the order denying DIP's motion and direct that the Final Award be modified to require Choice—the non-prevailing party—to bear the arbitration costs and arbitrator fees that Section 16 commands, reimbursing DIP the $158,879.85 it paid and modifying the total fee-and-cost award accordingly. At a minimum, the Court should remand with instructions to apply the essence standard of 9 U.S.C. § 10(a)(4) to DIP's principal ground in the first instance.

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Third Circuit Local Appellate Rule 28.3(d), I certify that I am a member of the bar of this Court.

Dated: August 4, 2026

*/s/ Justin E. Proper*
Justin E. Proper

## CERTIFICATE OF COMPLIANCE

1. **Type-Volume.** This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,779 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. **Typeface and Type Style.** This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

3. **Identical Text and Virus Check.** Pursuant to Third Circuit Local Appellate Rule 31.1(c), I certify that the text of the electronically filed brief is identical to the text of any paper copies, and that a virus check was performed, which detected no viruses.

*/s/ Justin E. Proper*
Justin E. Proper

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2026, I electronically filed the foregoing Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system, which will serve all counsel of record.

*/s/ Justin E. Proper*
Justin E. Proper